IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN B. GESNER,

                    Plaintiff,

                       v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                    Defendant.

_____

Civil No. 06-1553-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

     Plaintiff, John Gesner ("Gesner"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. This court has jurisdiction under 42 USC §§ 405(g)

1 - FINDINGS AND RECOMMENDATION

and 1383(c).  The Commissioner's decision should be reversed and remanded for further proceedings for the reasons that follow.

## BACKGROUND

Gesner was born in 1956 and completed one year of college.  Tr. 62, 88.[1]  He worked as a mental health therapist at the Oregon State Hospital for over 20 years.  Tr. 83.  That work ended in September 2001, with the exception of a three day return effort in February 2002, after which he was terminated.  Tr. 64, 77, 977.

Gesner has a history of back injuries, beginning in 1990 when he fell down some stairs.  Tr. 321.  In 1996 he sustained a second back injury while restraining a patient.  Tr. 83, 321.  At various times through May 2002, physicians assessed lumbar strain with mild degenerative joint disease with no nerve root impingement.  Tr. 161, 181-82, 219, 222-23.  Imaging studies conducted in January 2003 showed no evidence of fracture, but noted minor degenerative changes.  Tr. 269-70.

Gesner has a long history of drug and alcohol problems, beginning in childhood.  Tr. 233-35, 740.  He received drug and alcohol treatment over the years, including participation in both outpatient and inpatient programs.  Tr. 239, 248, 740.  After treatment in 1990, he remained abstinent from alcohol for seven years, but relapsed after a back injury in 1998.  Tr. 233.  He again sought and received treatment 1998-2000 and entered inpatient drug and alcohol treatment on September 25, 2001, his alleged onset date.  Tr. 227-257.  He completed inpatient treatment on January 31, 2002, but remained under outpatient care through at least July 2002.  Tr. 227-28.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on February 28, 2007 (Docket #11).

2 - FINDINGS AND RECOMMENDATION

Gesner also has a history of childhood physical and sexual abuse and anger problems and in September 2002 began treatment with Veteran's Administration ("VA") psychiatrist, Charles Kuttner, M.D. Tr. 739-43. Between September 2002 and October 2005 Dr. Kuttner assessed major depressive disorder, explosive anger disorder, atypical psychosis, and bipolar disorder. Tr. 583, 610, 614, 737, 739-43, 810.

Gesner now alleges that he suffers from a disability due to post-traumatic stress disorder ("PTSD"), anxiety disorder, chronic depression, explosive anger disorder, and injuries to his back and foot. Tr. 82. Gesner applied for DIB on August 13, 2002, alleging disability since September 25, 2001. Tr. 62-64. His application was denied initially and upon reconsideration. Tr. 39-40, 45-47. A hearing was held before an Administrative Law Judge ("ALJ") on November 23, 2005. Tr. 972-1011. On February 15, 2006, the ALJ found Gesner not disabled. Tr. 22-36. The Appeals Council accepted additional evidence into the record but denied review of Gesner's application on September 30, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 8-12. Gesner appeals that decision.

## DISABILITY ANALYSIS

The Commissioner engages in a five step sequential process in determining disability under the meaning of the Act. 20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140-42 (1987). Gesner challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR § 404.1520(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 CFR

3 - FINDINGS AND RECOMMENDATION

§§ 404.1509; 404.1520(4)(ii).  Absent such a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment listed in the regulations.  20 CFR § 404.1520(4)(iii).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, then the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his  impairments.  20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ uses this information to determine if the claimant can perform past relevant work at step four.  20 CFR § 404.1520(a)(4)(iv).

If the claimant cannot perform past relevant work, then the ALJ must determine if the claimant can perform other work in the national economy at step five.  *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's residual functional capacity.  *Id.*  If the Commissioner meets this burden the claimant is not disabled.  20 CFR § 404.1566.

///

///

# THE ALJ'S FINDINGS

The ALJ evaluated Gesner's impairments at step two as:

> degenerative disc disease of the cervical and lumbar spine, residuals of left foot injury, obesity, a history of dysthymia versus major depression, a history of post traumatic stress disorder with chronic anxiety, a personality disorder, and polysubstance abuse that are considered "severe" in combination.

Tr. 35.

The ALJ found that these impairments did not meet or equal a listed impairment at step three. *Id.* The ALJ subsequently found Gesner "not fully credible" regarding his alleged impairments and their impact upon his ability to work. *Id.* As a result, the ALJ assessed Gesner's RFC as follows:

> The claimant retains the residual functional capacity to perform a modified range of light work. He can lift up to 10 pounds frequently and up to 15 pounds occasionally. He can stand and/or walk about six hours in a eight-hour workday. He can sit about six hours in a eight-hour workday. His ability to push and/or pull is unlimited within the above described weight restrictions. He can occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds. He should not work around dangerous machinery or perform any commercial driving. In addition, he is limited to work involving one- to two-step tasks, no direct contact with the public and no close interaction with co-workers.

*Id.*

Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Gesner could not return to his past relevant work as a mental health therapist, but retains the ability to perform significant work in the national economy as, for example, a small products assembler, hand packager, and electronics worker/packager. *Id.* The ALJ therefore found Gesner not disabled. *Id.*

5 - FINDINGS AND RECOMMENDATION

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 2007 WL 2874403 at *5 (9th Cir Oct. 5, 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id,* citing *Robins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes v. Bowen*, 881 F2d 747, 750 (9th Cir 1989); *see also Batson*, 359 F3d at 1193.

## FINDINGS

Gesner contends the ALJ improperly assessed the medical evidence, his credibility, and, as a result, his RFC and ability to perform work existing in the national economy.

### I.   Medical Source Statements

Gesner contends the ALJ failed to appropriately evaluate the opinions of treating psychiatrist Dr. Kuttner and evaluating psychologist Paul Brown, Ph.D.

#### A.   Legal Standard

A treating physician's opinion is generally accorded greater weight than an examining physician's opinion, and an examining physician's opinion is, in turn, accorded greater weight than a reviewing physician. *Edlund*, 253 F3d at 1157; *Lester v. Chater*, 81 F3d 821, 830 (9th Cir

1996).  The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating physician and "clear and convincing reasons" for rejecting an uncontroverted opinion.  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).  This standard applies even "[w]hen a nontreating physician's opinion contradicts that of a treating physician – but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician."  *Morgan v. Comm'r*, 169 F3d 595, 600 (9th Cir 1999), citing *Andrews v. Shalala*, 53 F3d 1035, 1041 (9th Cir 1995).  The opinion of a nonexamining medical advisor does not constitute substantial evidence justifying rejection of a treating or examining physician's opinion unless it is  "supported by other evidence in the record and . . . consistent with it."  *Id*.  The opinion of the treating physician is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner.  SSR 96-5p, 1996 WL 374183 *2.

> ### B.    Treating Psychiatrist Dr. Kuttner

> #### 1.    Dr. Kuttner's Medical Opinion

Dr. Kuttner, a VA psychiatrist, treated Gessner between September 2002 and October 2005.  The ALJ cited Dr. Kuttner's treatment notes and diagnoses of major depressive disorder, "recurrent, severe, and in partial control," explosive disorder "by history," and "polysubstance abuse/dependence in remission."  Tr. 25.  However, he accorded greater weight to the hearing testimony by the medical expert, psychiatrist Nancy M. Tarrand, M.D., who identified substance abuse as Gesner's primary problem:

> While it is noted that the claimant has been diagnosed with an explosive anger disorder and was subsequently diagnosed with bipolar disorder in March 2005 by Dr. Kuttner, greater weight has been given to the testimony of impartial medical expert

Dr. Tarrand, M.D., at the hearing that such diagnoses cannot be
made until any substance abuse is controlled. Dr. Tarrand testified
to her opinion that the record does not clearly document any period
of sobriety of six months or more since January 1998, noting the
claimant's inconsistent report and no documentation of urinalysis.
The Administrative Law Judge further accepts the opinion of
Dr. Tarrand that substance abuse is the major contributing factor to
the claimant's emotional instability.

Tr. 26.

Dr. Tarrand testified that she believed Gesner "is an individual who has a long-standing

history of a problem with substance abuse . . . Since [January 1998] it appears to me that he

really has not maintained . . . sobriety for a significant period of time, and that has been a major

factor contributing to his other diagnoses." Tr. 997-98. Dr. Tarrand noted Gesner's diagnoses of

depression, bipolar disorder, and PTSD, but concluded:

I see a lot of poor impulse control associated with substance abuse.
And until the substance abuse is controlled, I don't think it is
possible to separate that out and call it a bipolar disorder or
intimate explosive disorder or anything else on its own. I don't see
any clear-cut severe post traumatic stress disorder. So, primarily, I
think the main problem is substance abuse.

Tr. 998.

The ALJ found that "Dr. Tarrand had the opportunity to review all the medical evidence

of record," that her "opinion is consistent with the record when viewed in its entirety," and that

her opinion was "more convincing because she elucidated the role of the claimant's substance

abuse on his functioning." Tr. 25, 31-32.

Dr. Tarrand's opinion directly conflicts the opinion of Dr. Kuttner who diagnosed Gesner

with mental impairments in addition to his drug and alcohol abuse. Dr. Kuttner also provided a

medical source statement provided dated July 6, 2005, detailing Gesner's disabling limitations

independent of drug and alcohol abuse due to personality disorder, bipolar disorder, and chronic pain. Tr. 759-61. Because Dr. Tarrand controverted the treating physician, Dr. Kuttner, the ALJ could not give Dr. Kuttner's opinion less than controlling weight without stating specific, legitimate reasons supported by the record. The ALJ failed to do so.

First, although the ALJ correctly noted that Dr. Tarrand reviewed the medical record, she made no independent clinical findings. In contrast, Dr. Kuttner treated Gesner nearly once a month between September 2002 and October 2005 and had an opportunity to observe and document his mental functioning. During this time period, Dr. Kuttner assessed major depressive disorder, polysubstance addiction, explosive anger disorder, PTSD, bipolar disorder, and personality disorder. Tr. 583, 610, 614, 737, 739-43, 810. In February and March 2004 Dr. Kuttner additionally assessed "ongoing atypical psychosis," a pain syndrome, and "mixed mania." Tr. 609, 613, 662. Dr. Kuttner noted periods of improvement in October 2002, August 2003, and February 2004, but also noted that Gesner's condition appeared to deteriorate in May 2003 and July 2004. Tr. 735, 616, 647, 674, 588. Simply because Dr. Tarrand reviewed the entire medical record is not a legitimate reason to give her opinion greater weight than Dr. Kuttner's contrary opinion.

Second, with respect to the role of substance abuse, the ALJ concluded that, unlike Dr. Tarrand, "Dr. Kuttner did not specifically discuss the claimant's substance abuse and appears to be unaware of the claimant's continued marijuana use," citing two notes from October 2005. Tr. 32. However, Dr. Kuttner's treatment notes repeatedly discuss Gesner's substance abuse. *E.g.,* Tr. 585, 622, 639, 647, 674, 691.

Third, it is not altogether clear from the record that, as testified by Dr. Tarrand, Gesner had no period of sobriety lasting six months or more since 1998. The record reveals that Gesner remained clean and sober after entering treatment on September 25, 2001, until one day short of two years. Tr. 739-40 (345 days), 260 (453 days), 707 (1.5 years), 690 (19 months), 695 (19 months), 647 (23 months), 635 (nearly 2 years). He suffered a relapse on September 24, 2003 (Tr. 616), then remained sober again until having another relapse in March or April 2004. Tr. 585, 594, 602. He then remained sober several more months until January 25, 2005. Tr. 560-62. When asked to identify any point in the record where Gesner was not clean and sober in the nearly two years following September 2001, Dr. Tarrand failed to do so. Tr. 1000-02. Although she noted that Gesner has "a great deal of difficulty telling the truth," citing to entries in 2005 (Tr. 999-1000), and that the record contains no drug or urine screens to confirm sobriety (Tr. 1000), she inaccurately summarized what the record does contain concerning Gesner's periods of sobriety, especially in the 2001-03 time frame.

Finally, when drug addiction or alcoholism is involved, the ALJ must first determine if the claimant is disabled and then determine if the claimant would still be disabled if he stopped using drugs or alcohol. 20 CFR § 404.1535; *see Bustamante v. Massanari*, 262 F3d 949, 955 (9th Cir 2001). The ALJ failed to follow this sequence when he adopted Dr. Tarrand's opinion that the extent of Gesner's mental impairments could not be ascertained due to his substance abuse. Instead, he first should have determined whether Gesner's physical and mental impairments cause him to be disabled even with substance abuse and, if so, then determined if Gesner would still be disabled without substance abuse. He did not perform that sequential analysis.

In sum, the ALJ failed to provide adequate reasons for failing to give controlling weight to Dr. Kuttner's diagnoses.

### 2. Dr. Kuttner's Vocational Opinion

With respect the RFC assessment, Gesner contends that the ALJ failed to recognize most of the areas of mental function found limiting by Dr. Kuttner. In January and August 2004, Dr. Kuttner wrote letters "to whom it may concern" stating that Gesner was disabled due to mental impairments since September 2001. Tr. 318, 319. In August 2004 Dr. Kuttner explained:

> [Gessner] is in our care for Major Depressive Disorder, Recurrent, which manifests as not only depression but a great deal of tension, difficulty concentrating and completing tasks, and in anger. Accordingly, in [my] opinion . . . [although this is not an official determination by the VA], he is permanently and totally disabled. In addition, he has considerable anxiety related to his chronic pain and disability from his physical condition, which will be addressed by his primary care provider . . .

Tr. 319.

The ALJ noted these opinions in his findings, but stated that Dr. Kuttner "did not include reports of any objective findings to support his opinion." Tr. 31. Vocational determinations are reserved for the Commissioner. 20 CFR § 404.1527(e). However, the ALJ's finding that Dr. Kuttner's disability letter is unsupported by "objective findings" is contradicted by Dr. Kuttner's voluminous treatment record discussed above.

### C. Examining Psychologist Dr. Brown

Gesner also contends that the ALJ failed to include the mental functioning limitations contained in the RFC assessment of examining psychologist, Paul Brown, Ph.D. The ALJ

considered, but gave little weight to, the opinion of Dr. Brown.  Tr. 32-33.  The ALJ noted that

Dr. Brown "administered no formal psychological testing," evaluated Gesner "on only one

occasion," and only reviewed an admission record for treatment dated September 25, 2001.

Tr. 33.

Dr. Brown evaluated Gesner on December 21, 2002.  Tr. 258-62.  He assessed Gesner as

suffering from polysubstance abuse, depression with paranoid and psychotic features, and "rule

out " personality disorder (Tr. 261), and subsequently assessed his ability to function in a work

environment as follows:

> He could perform simple and repetitive tasks but not on a regular
> basis.  It is not clear whether he could accept instructions from
> supervisors at this time or interact with coworkers and the public.
> His behavior seems to[o] aggressive, angry, and homicidal to
> maintain work activity on a consistent basis or regular attendance
> at a job.

Tr. 261-62.

The ALJ must cite "specific and legitimate" reasons for rejecting an examining

psychologist's contradicted opinion.  *Lester*, 81 F3d at 830-31.  Gesner cites no specific flaws in

the ALJ's analysis, and this court finds the ALJ's reasons for rejecting Dr. Brown's opinion

sufficiently specific and legitimate.  Furthermore, the ALJ's RFC assessment cited Dr. Brown's

limitations, including "limited work involving one to two step tasks, no direct contact with the

public, and no close interaction with co-workers."  Tr. 35.  Thus, the ALJ's analysis of

Dr. Brown's opinion is based upon the record.

**E.**     **Conclusion**

For these reasons, the ALJ inappropriately evaluated Dr. Kuttner's opinion. The ALJ's citation to Dr. Tarrand's opinion is based upon the record, but the ALJ did not apply the proper legal standards in giving her opinion greater weight than that of Dr. Kuttner.

## II.     **Gesner's Credibility**

The ALJ found Gesner's "allegations only partially credible." Tr. 27. The ALJ cited a number of reasons for discrediting Gesner's testimony: (1) medical record; (2) inconsistent testimony regarding his substance abuse; (3) inconsistent testimony regarding his personality traits; ( 4) use of a cane without a prescription; (5) employment history; (6) exaggeration of his symptoms; (7) activities of daily living; and (8) secondary gain. Tr. 28-31. Gesner contends this is an insufficient credibility determination.

### A.     **Legal Standard**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter* at *6, citing *Bunnell v. Sullivan*, 947 F2d 341, 344 (9th Cir 1991) (*en banc*). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*. Once a claimant shows an

underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because " the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883.

**B.    Credibility Analysis**

**1.    Allegations of Disability**

After noting that Gesner's impairments could "reasonably be expected to produce some pain and limitation," the ALJ noted that "the evidence does not support a finding that the claimant's impairments preclude all work activity." Tr. 27.  Gesner asserts that he need not prove that his impairments preclude all work activity.  This assertion is correct.  Under Social Security regulations, Gesner must show that he is unable to perform substantial gainful activity in either his past relevant work or in work existing in the national economy.  20 CFR § 404.1520.

However, after making the comment challenged by Gesner, the ALJ cited reports by his physicians, that despite his pain, Gesner could still perform a modified range of light exertion work. Gesner does not establish, and this court cannot ascertain, how this one comment constitutes reversible error.

**2.    Chronic Pain**

Gesner contends the ALJ improperly discounted his testimony based on a May 2003 report that "although MRI findings revealed a cause for some pain which warranted conservative treatment, there was no evidence of neurological dysfunction on physical exam and the claimant's problem was considered a 'chronic pain issue.'"  Tr. 28.  Gesner further alleges that

the Commissioner may not discredit limitations solely on the ground that they are not fully corroborated by objective medical findings.

Although the ALJ noted that physicians suggested Gesner had a "chronic pain issue," he did not cite this as a reason for discrediting Gesner. Instead, he cited it as evidence that despite Gesner's reported pain, his physicians reported that he could still perform some work. Tr. 28. That conclusion is supported by the record.

### 3. Sobriety

Gessner challenges the ALJ's reliance upon Dr. Tarrand's assessment of the record regarding his sobriety. Gesner specifically submits that he has engaged at times in substance abuse and supplies a chart documenting his sobriety and relapses between January 2002 and February 2005. Because the Commissioner has acknowledged his substance abuse as a medically determinable impairment, he argues that the ALJ may not find him less credible due to this impairment.

Gesner's submission misconstrues the ALJ's finding. The ALJ's credibility finding was not based on Gesner's substance abuse. Instead, the ALJ's credibility finding cited Gesner's contradictory reports in the record regarding his substance abuse in 2005. Tr. 28, citing Exhibits 18F/496, 588 and 22F/660, 662 (Tr. 548, 560, 814). This distinction is relevant since the ALJ may cite contradictory testimony in finding a claimant not credible. *Tonapetyan v. Halter*, 242 F3d 1144, 1148 (9th Cir 2001); *Verduzco v. Apfel*, 188 F3d 1087, 1090 (9th Cir 1999).

### 4. Work History

The ALJ concluded that Gesner's "extensive history of employment at Oregon State Hospital from April 1979 to February 2002 suggests he has been able to maintain work activity

despite residuals of multiple work injuries and mental impairments including personality disorder and his significant substance abuse." Tr. 29. Gesner submits that the ALJ erred in citing his work history to find him not fully credible.

The ALJ may note a claimant's work record. 20 CFR §§ 404.1520(a)(4)(ii), 404.1560. A positive 20 year work history may well undermine a claimant's testimony as to the extent of his disability. However, Gesner claims that his disability began in September 2001 when he stopped working and entered inpatient treatment. Thus, his credibility rests on whether the circumstances changed in September 2001, rendering his prior 20 years of work as irrelevant.

Gesner was convicted of menacing in June 2001 after sticking a loaded gun in a man's face in response to a threat. Tr. 232, 259-60, 741. His back symptoms escalated to the point that by September 2001, his treating physician, Jerry R. Becker, M.D., encouraged him to move to a "noncombat zone work." Tr. 160. In September 2001, Gesner referred himself to inpatient treatment based on "desperation and fear" due to his drug and alcohol addiction, depression, physical problems, work difficulties, legal difficulties, and financial difficulties due to a gambling addiction. Tr. 231-32. He was terminated from his employment in February 2002 based on his conviction and his chemical dependency. Tr. 259, 377, 977. He applied for Vocational Rehabilitation Division services on February 27, 2002, and was found eligible on May 28, 2002. Tr. 369-72, 392. He made three attempts to complete three consecutive terms at Chemeketa Community College, but had to withdraw each term due to health issues. Tr. 416, 418-19. This history indicates that Gesner worked as long as he could and that his work history before September 2001 bears little relationship to his ability to work thereafter due to his impairments.

**5.      Activities of Daily Living**

Gesner contends that the ALJ's reliance upon his activities of daily living, as described by Gesner, his mother, and his medical record, is not inconsistent with his statement of limitations.

The ALJ first cited Gesner's reports that he attended Alcoholics Anonymous meetings, visited his children, performed yardwork, walked his dog an hour at a time, visited a fitness center, visited his sisters, and attended church. Tr. 30. The ALJ also cited Gesner's report that he cleans his living space and performs yardwork. *Id.* The ALJ finally noted Gesner's report that he "spent a lot of time in bed " which was "inconsistent with other information in the file," citing Gesner's reports to Dr. Kuttner that he "had plans of getting back online, joining a fitness center, spending three hours daily swimming and working out, and taking a yoga class (Exhibit 18F/474)." *Id.*

The ALJ may cite a claimant's activities of daily living in finding a claimant not credible. *Smolen*, 80 F3d at 1284. These activities are not necessarily transferable to the workplace, but may suggest the claimant can do more than he alleges. "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F3d 676, 680-81 (9th Cir 2005) (*citing Magallanes*, 881 F2d at 750). The ALJ's citation to Gesner's activities of daily living is a rational interpretation of the evidence.

**6.      Personality Disorder**

In his credibility assessment, the ALJ stated that "[m]edical records suggest claimant's complaints of severe pain associated with threats of homicide and suicide have been described as manipulative and viewed as drug-seeking behavior." Tr. 28. Gesner contends that such misbehavior is consistent with his personality disorder which the ALJ failed to reflect in his RFC assessment. Gesner does not specify how such manifestations of a personality disorder would impact the workplace and does not articulate how the ALJ's reference to his personality disorder constituted an erroneous credibility assessment.

The ALJ found Gesner's personality disorder "severe" and limited him to "no direct contact with the public and no close interaction with co-workers." Tr. 35. The ALJ did not directly cite Gesner's personality disorder as a reason to find him not fully credible. Instead, he noted that Gesner's reports of reading 100 novels while incarcerated and later visiting tanning booths and working out afterward were inconsistent with his concurrent reports of auditory and visual hallucinations, delusions, and "severe paranoia." Tr. 29. It is not altogether clear that reading books is inconsistent with a personality disorder, but Dr. Tarrand did testify that visiting a tanning booth and working out afterward is inconsistent with severe paranoia. Tr. 1000. The ALJ also accurately noted Dr. Kuttner's reports that he felt manipulated and blackmailed by Gesner's threats to use street drugs. Tr. 28. However, the record does not indicate that Dr. Kuttner related these threats to Gesner's personality disorder. Tr. 585, 700.

Thus, the ALJ properly reflected Gesner's personality disorder in the RFC assessment and did not err to the extent that he found Gesner less credible due to his personality disorder.

### 7. <u>Secondary Gain</u>

The ALJ suggested that Gesner's application was motivated by secondary gain. Tr. 30. This court does not sustain such an inference as a legitimate reason to discredit Gesner. By definition, an application for disability insurance is an application for financial assistance. If desire or expectation of obtaining benefits were sufficient to discredit a claimant, then no claimant would be found credible. *Ratto v. Sec'y, Dep't of Health and Human Servs.*, 839 F Supp 1415 at 1428-29 (D Or 1993).

### 8. Other Credibility Findings

The ALJ noted that Gesner used a cane although medical sources inferred it was unnecessary. Tr. 29. The ALJ also cited physical therapy reports that Gessner exaggerated his symptoms. *Id.* These findings are supported by the record. Tr. 515, 899. The ALJ may question a claimant's credibility if the record suggests exaggeration. *Tonapetyan*, 242 F3d at 1148.

### C. Credibility Conclusion

Except as noted, the ALJ's remaining credibility analysis was proper. This court may sustain an ALJ's overall credibility decision even if specific findings are not upheld. *Batson*, 359 F3d at 1197. Considering the reasons supported by the record, including those reasons not challenged by Gesner, the ALJ provided sufficient clear and convincing reasons for questioning Gesner's credibility. *Smolen*, 80 F3d at 1284.

## IV. Vocational Expert's Testimony

The VE testified that an individual with the ALJ's indicated RFC could not perform Gesner's past work as a mental health therapist, but could perform work as a small products

assembler, hand packager, or electronics worker.  Tr. 1007.      Gesner contends the ALJ's

reliance upon this testimony is flawed in three respects.

First, Gesner contends the ALJ failed to perform a function-by-function analysis.

However, Gesner fails to point to any erroneously omitted functions.

Second, Gesner contends that the ALJ's finding is inconsistent with the *Dictionary of

Occupational Titles* ("DOT").  He specifically alleges that the ALJ incorrectly considered

"general educational development" ("GED") reasoning requirements.  The ALJ instructed the

VE to consider limitations including "simple one, two step tasks."  Tr. 1007.  After citing three

DOT job specifications (small products assembler, hand packager, or electronics worker), the

VE indicated that these jobs are compatible with "simple tasks."  *Id.*  The DOT assigns these

jobs GED level two reasoning.  DOT, *available at* http://www.occupationalinfo.org (last visited

October 29, 2007).  GED level two reasoning specifies an ability to "apply commonsense

understanding to carry out detailed but uninvolved written or oral instructions," as well as an

ability to "deal with problems involving a few concrete variables in or from standardized

situations."  DOT, Appendix 3, *available at* http://www.occupationalinfo.org/

appendxc_1.html#III (last visited October 29, 2007).

The VE stated that a person limited to "simple, routine tasks" could perform the specified

jobs.  Tr. 1007.  Gesner does not establish that "simple one, two step tasks," as opposed to

"simple one, two step *instructions,*" are inconsistent with GED level two reasoning.  Thus, the

ALJ properly relied upon the VE and the DOT.

Gesner finally contends the ALJ failed to ask the vocational expert if his testimony was

consistent with the DOT.  The ALJ asked the vocational expert to supply the DOT codes for the

jobs he identified.  Tr. 1010.  Such identification is indicative of sufficient compatibility with

DOT standards.  *See Massachi v. Astrue*, 486 F3d 1153-54 (9th Cir 2007).

In summary, the ALJ's reliance upon the VE should be sustained.  However, should the

ALJ modify Gesner's RFC assessment upon remand, then the VE's testimony will lack

evidentiary value and further vocational testimony should be solicited.

## V.      Remand

After finding that the ALJ erred, this court has discretion to remand for further

proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th

Cir 2000).  The issue turns on the utility of further proceedings.  A remand for an award of

benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is not sufficient to

support the Commissioner's decision.  *Rodriguez v. Bowen*, 876 F2d 759, 763 (9th Cir 1989).

Thus, improperly rejected evidence should be credited as true and an immediate award of

benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence, (2) there are no outstanding issues that must be resolved before a determination

of disability can be made, and (3) it is clear from the record that the ALJ would be required to

find the claimant disabled were such evidence credited."  *Harman*, 211 F3d at 1178, citing

*Smolen*, 80 F3d at 1292.  However, where it is not clear the ALJ would be required to award

benefits were the improperly rejected evidence credited, the court has discretion whether to

credit the evidence. *Connett v. Barnhart,* 340 F3d 871, 876 (9th Cir 2003).

Here, the ALJ improperly rejected the opinion of Dr. Kuttner and failed to follow the

proper analysis for a case involving substance abuse.  If, upon remand, the ALJ finds that the

improperly rejected evidence establishes disability, then the ALJ must perform a subsequent analysis to determine if Gesner's drug and/or alcohol addiction is a "contributing factor" to his disability.  20 CFR § 404.1535.  This court may not perform this analysis, but should direct the ALJ to properly consider Dr. Kuttner's July 2005 statement regarding Gesner's impairments without drug or alcohol use.  Tr. 759.

///

///

///

## RECOMMENDATION

Because the Commissioner's decision that Gesner did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards, this court recommends that this case be REMANDED for reconsideration of the opinion of Dr. Kuttner, as well as an appropriate drug and alcohol analysis.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due by November 27, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 9th day of November, 2007.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge